**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Peerless Indemnity Insurance Company,

      Plaintiff,

  v.

Sushi Avenue, Inc.,

      Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 15-4112 ADM/LIB

_____

Daniel W. Berglund, Esq., and Meghan M. Rodda, Esq., Grotefeld Hoffman Schleiter Gordon Ochoa & Evinger LLP, Minneapolis, MN, on behalf of Plaintiff.

Blair A. Harrington, Esq., Jon R. Steckler, Esq., and Thomas P. Harlan, Esq., Madigan Dahl & Harlon, PA, Minneapolis, MN, on behalf of Defendant.

_____

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Plaintiff Peerless Indemnity Insurance Company's ("Peerless") Objection [Docket No. 53] to Magistrate Judge Leo I. Brisbois' January 4, 2017 Order [Docket No. 52] ("Order"). Peerless objects to the portion of Judge Brisbois' Order that concluded Peerless' attorney-client privilege was not maintained and that its Amended Redaction Log was insufficient. For the reasons stated below, Peerless' Objection is sustained in part and overruled in part.

## II. BACKGROUND

**A. The Underlying Dispute**

Peerless was Sushi Avenue, Inc.'s ("Sushi") workers compensation insurance carrier for two policy periods. Order at 2. For the first policy period, March 19, 2013 through March 19, 2014, Peerless estimated the premium would be $39,630. Id. For the second period, March 19,

2014 through February 15, 2015, the premium was estimated to be $46,864. Id. The contract provided that Peerless would determine the final premium at the end of each policy term, "using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by the policy." Id. Sushi was to pay Peerless the difference between the estimated and final premium. Id.

Sushi is in the business of selling sushi and related products in kiosks located in supermarkets in Minnesota and other states. Sushi contracts with individuals who operate the kiosks. Id. at 1–2. That contract obligates the kiosk operators to carry workers compensation insurance that is sufficient to protect both the kiosk operators and Sushi from potential claims. Id. at 2. Sushi claims that the kiosk operators are independent contractors rather than employees of Sushi.

On April 2, 2014, Dawn Mathison ("Mathison"), a Senior Premium Auditor with Liberty Mutual Insurance ("Liberty"), the parent company of Peerless, conducted an audit of the first policy period. Id. After reviewing payroll, tax filings, and the contract between Peerless and Sushi, Mathison concluded the kiosk operators were Sushi employees, not independent contractors. As a result, the first policy premium was increased by $389,354. Id. at 2–3.

Peerless and Sushi could not resolve the additional audit premium for the first policy period. Workers compensation coverage for the second policy period was cancelled effective March 18, 2015. Id. at 4. In April 2015, Mathison began a cancellation audit for the second policy period, eventually concluding that Sushi owed an additional premium of $357,640. Id. The parties continue to disagree whether the kiosk operators are employees of Sushi or independent contractors.

On November 13, 2015, Peerless filed this breach of contract suit based on Sushi's failure to pay the additional premiums. Id. at 5. Peerless seeks a declaratory judgment that the kiosk operators are employees of Sushi and should be included when calculating Sushi's workers compensation insurance premiums. Id.

During discovery, Sushi requested Peerless produce documents relating to Peerless' assertion that the kiosk operators are Sushi employees rather than independent contractors. Id. at 6. In response to this request, Peerless produced documents in both redacted and unredacted form, but also declined production of certain documents, citing attorney-client privilege or the work product doctrine. Id. Peerless' redaction log dated June 7, 2016, identified 37 documents protected by privilege or work product doctrine. Id. On September 8, 2016, Sushi told Peerless that its claims of privilege were improper because the documents referenced in the redaction log did not identify an attorney as either a creator or recipient of the communication. Id. Sushi requested that Peerless produce unredacted versions of documents identified on the redaction log. Peerless declined and instead offered to provide an Amended Redaction Log to better explain its assertions of privilege. Id. at 7.

Through depositions conducted on September 14 and 15, 2016, Sushi learned of other unproduced communications it believed were responsive to its document requests. Id. After receiving a September 16, 2016 deficiency letter, Peerless produced nearly 6,000 pages of documents between September 16 and October 7, 2016. Id. One of the documents produced is a September 3, 2014 email that Peerless now claims is privileged. Id. at 8.

On October 18, 2016, Peerless produced an Amended Redaction Log adding 258 additional documents Peerless claimed were protected by attorney-client privilege or the work

3

product doctrine.  Id.  The log, however, did not further explain why the documents did not need to be produced.  Id.

Sushi sent another deficiency letter on October 24, 2016.  Id.  In that letter, Sushi again complained about the substance of Peerless' Amended Redaction Log and additionally demanded further document production.  Id.  In response, Peerless claimed the redacted documents were properly withheld.  Id.  Peerless also stated that the September 3, 2014 email was inadvertently produced and requested it be returned.  Id.  Sushi responded that the email was not privileged and, even if it was, privilege had been waived.  Id.

On November 14, 2016, Sushi filed a Motion to Compel [Docket No. 33], requesting production of unredacted versions of 123 documents Peerless claims are privileged.  Id. at 9.  In the alternative, Sushi requested Magistrate Judge Brisbois view the documents in camera to determine if they were properly withheld.  Id.  Additionally, Sushi sought a determination that the September 3, 2014 email was either not privileged or any privilege had been waived.  Id.

**B.  Judge Brisbois' Order**

Judge Brisbois granted in part and denied in part Sushi's Motion to Compel.  In granting Sushi's motion in part, Judge Brisbois noted that many of the documents in dispute were disseminated to individuals who held corporate roles that Peerless did not explain.  Id. at 21–28.  Without this information, Judge Brisbois determined that he was unable to properly assess whether the communication had been disseminated only to people who, because of the corporate structure, needed to know its contents, which is an element Peerless had the burden of carrying to support its privilege claim.  See id.  Accordingly, Judge Brisbois concluded that Peerless failed to carry its burden that seven of the 12 "batches" of documents were protected by

attorney-client privilege.[1] Id. at 27. For the same reason, attorney-client privilege also did not apply to the September 3, 2014 email, as it was disseminated to an individual whose identify Peerless did not explain. Id. at 28.

**C. Peerless' Objection**

Peerless objects to Judge Brisbois' conclusion that it failed to carry its burden in establishing attorney-client privilege. Peerless argues that Judge Brisbois' Order improperly based its conclusions on issues that were not briefed or argued. Peerless requests either that Judge Brisbois' Order be overruled, or that this matter be remanded for proper briefing on the identities and roles of the unknown individuals cited in the Order.

### III. DISCUSSION

**A. Standard of Review**

The standard of review applicable to an appeal of a magistrate judge's order on a nondispositive issue is extremely deferential. See Reko v. Creative Promotions, Inc., 70 F. Supp. 2d 1005, 1007 (D. Minn. 1999). The district court must affirm a decision by a magistrate judge on a nondispositive issue unless the decision is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). A decision is "'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Chakales v. Comm'r of Internal Revenue, 79 F.3d 726, 728 (8th Cir. 1996). "A decision is 'contrary to the law' when it 'fails to apply or misapplies relevant

---

[1] As to the five other "batches," Judge Brisbois denied Sushi's motion with respect to batch one, and struck from consideration the other four batches because the contents were either wholly contained within other batches of documents or outside the dates of disputed documents the parties had agreed upon at the November 28, 2016 motion hearing.

statutes, case law or rules of procedure.'" Knutson v. Blue Cross & Blue Shield of Minn., 254 F.R.D. 553, 556 (D. Minn. 2008) (quoting Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co., 592 F. Supp. 2d 1087, 1093 (N.D. Iowa 2008)).

**B. Attorney-Client Privilege**

While Minnesota has not explicitly adopted a test for the application of attorney-client privilege in a corporate setting, three tests have been considered, including one adopted by the Eighth Circuit. The five-factored Diversified Industries test, which the parties also cite in this Objection as the controlling test, provides that attorney-client privilege:

> is applicable to an employee's communication if (1) the communication was made for the purpose of securing legal advice; (2) the employee making the communication did so at the direction of his [or her] corporate superior; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication is within the scope of the employee's corporate duties; and (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

Leer v. Chi. Milwaukee, St. Paul & Pac. Ry. Co., 308 N.W.2d 305, 309 (Minn. 1981) (quoting Diversified Indus. Inc. v. Meredith, 572 F.2d 596, 609 (8th Cir. 1977) (en banc)). Peerless, as the party asserting privilege, bears the burden of establishing its applicability. United States v. Williams, 720 F.3d 674, 686 (8th Cir. 2013).

According to Peerless, Sushi argued in its Motion to Compel that the attorney-client privilege did not protect against disclosure either because Peerless' counsel was not acting as legal counsel but participating in the audit process as an ordinary businessman, or because Liberty auditor Mathison ignored legal advice from her in-house counsel thereby putting the advice at issue. Peerless argues that Sushi did not assert that the communications at issue were distributed beyond those corporate representatives who needed to know of their contents, the

basis of Judge Brisbois' conclusion that privilege had been waived.

Sushi responds that Peerless did address the identities of the individuals in its opposition memorandum, but failed to satisfy its burden of showing that those individuals were corporate representatives who needed to know the contents of the communications. Sushi argues that because Peerless' Objection impermissibly relies upon new evidence that was not presented to Judge Brisbois, it should be overruled.

### 1. Disseminated to Individuals Other than Those Needing to Know

Peerless' argument that Judge Brisbois' ruling was based on a theory that was not briefed or argued is unpersuasive. In its Memorandum in Opposition [Docket No. 42], Peerless recited the <u>Diversified Industries</u> test and advanced its reasoning as to why each factor had been established. In order to satisfy the second element, Peerless provided the names and roles of four individuals who communicated with in-house counsel. Judge Brisbois determined this was sufficient to establish the second factor. <u>See</u> Order at 16, 22. With respect to the fifth element, Peerless stated:

> But Defendant has produced no legal support for its argument that a corporate client cannot disseminate legal advice to others within the corporate structure that need to know of the attorney's advice. Indeed, the communications were only shared among the employees requesting legal advice and those employees <u>directly involved in the audit</u> either from the collections, underwriting/sales, or audit departments. As such, the confidentiality of the legal advice was maintained and the attorney-client privilege applies to the enclosed communications.

Pl.'s Mem. Opp'n Mot. Compel at 13 (emphasis in original). Peerless thus recognized that in establishing privilege, it had the burden to convince Judge Brisbois that the communications at issue were not disseminated beyond those persons who needed to know their contents. Peerless did not explain the corporate role of any individuals other than the four identified for purposes of

7

the second element, electing instead to broadly assert the conclusion that the communications were not shared beyond those who needed to know their contents.

In viewing the disputed communications in camera, Judge Brisbois discovered that many of the communications were copied to individuals whose identity and role Peerless did not explain. Judge Brisbois' citation to <u>Ewald v. Royal Norwegian Embassy</u>, No. 11-2116, 2014 WL 1309095, at *10 (D. Minn. Apr. 1, 2014), informed his ultimate conclusion:

> Without this information, this Court cannot determine whether these groups needed to know legal advice. Therefore, under the federal common law, the Embassy has failed to show that the attorney-client privilege attaches to communications between employees, and has failed to meet its burden to show that the privilege was not waived when RNE 363 was distributed to third parties.

Peerless' failure to identify Ann Fitzpatrick, Stacie Graham, Anita Pierce, James Slaski, Collin Becker, and Laura Abraham, proved fatal to Peerless' assertion of attorney-client privilege.

Judge Brisbois' conclusion that a required element of establishing attorney-client privilege was lacking is not clearly erroneous or contrary to law. In its Motion to Compel, Sushi argued that the attorney-client privilege did not apply to the disputed documents. Although Sushi's challenges to Peerless' claim of privilege did not focus on element five of the <u>Diversified Industries</u> test, Peerless ignores that Sushi placed the assertion of attorney-client privilege squarely at issue. Thus, Peerless had a burden to demonstrate that privilege applied, a burden that Judge Brisbois' concluded was not satisfied.

Peerless' Objection is accompanied by a Declaration [Docket No. 55] identifying the position of each individual that Peerless had failed to identify earlier. The more appropriate time to provide this information was in response to Sushi's Motion to Compel. Submitting new evidence as part of an Objection impermissibly seeks to expand the record and overturn a

Magistrate Judge's ruling with evidence that was not provided to the Magistrate Judge. This is not allowed. See e.g., Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn., LLC, No. 09-3037, 2011 WL 1486033, at *2 (D. Minn. Apr. 19, 2011) ("It is well settled that a district court, on review of a magistrate judge's order, may not consider new affidavits or arguments that were not presented to the magistrate judge in the first instance.") (citing Roberts v. Apfel, 222 F.3d 466, 470 (8th Cir. 2000)).

Judge Brisbois' conclusion regarding the September 3, 2014 email is not clearly erroneous. The email was sent to James Slaski, an individual Peerless did not identify and thus failed to establish he was an individual who needed to know the contents of the email because of his role and duty in the corporate structure. Thus, for the same reasons as those stated above, Judge Brisbois properly concluded the email was not protected by the attorney-client privilege.

**2. Ann Fitzpatrick**

Ann Fitzpatrick is one of the individuals whose identity and role was not explained to Judge Brisbois. In responding to Peerless' Objection, Sushi does not contest Peerless' assertion that Fitzpatrick is a paralegal at Peerless' counsels' firm, and "agrees that [Peerless'] production of emails containing Ms. Fitzpatrick's name in the header does not constitute a waiver of the attorney-client privilege." Def.'s Resp. Pl.'s Obj. Magistrate's Jan. 4, 2017 Order [Docket No. 56] at 5 n.3. Therefore, Sushi agrees with Peerless' Objection that Judge Brisbois' rulings that the attorney-client privilege had been waived solely because Fitzpatrick was included on the communication should be set aside. Accordingly, Peerless' Objection is sustained with respect to the communications that comprise batch 2, and subparts a, b, e, f, and g of batch 3.

**C.  Redactions Log**

Peerless also objects that the sufficiency of its Amended Redaction Log was not a part of Sushi's Motion to Compel and therefore should not have been the subject of a ruling by Judge Brisbois.  Peerless requests the Court overrule Judge Brisbois' ruling that Peerless produce those communications in which he was unable to determine the affiliation of every individual on the Amended Redaction Log.  Sushi agrees that the sufficiency of the Amended Redaction Log was not directly at issue, arguing that Judge Brisbois merely commented on the log's completeness.  Sushi argues that the issue is either not properly before this Court or that any issue is moot because the Order determined that nearly all of the communications were not privileged.

>   In footnote 3 of the Order, Judge Brisbois states:
>
>   The Amended Redaction Log is itself insufficient to satisfy the requirement of Federal Rule of Civil Procedure 26(b)(5)(ii) that the privilege log "disclose the nature of the documents, communication, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Plaintiff's Amended Redaction Log does not identify whether any of the individuals it names are attorneys or give any information about the individual's role within the corporation, nor does it provide more than a boilerplate description of why the privilege applies.

Order at 17 n.3.  Judge Brisbois does not order Peerless to further amend its redaction log.  The basis for ordering production of the communications at issue was that Peerless failed to carry its burden of establishing the attorney-client privilege protected against disclosure.  For the reasons stated above, Peerless has not demonstrated that the part of Judge Brisbois' Order compelling production of certain documents that were disseminated to unknown individuals is clearly erroneous or contrary to law.  Peerless' Objection on this issue is overruled.

## IV.  ORDER

Based upon the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff Peerless Indemnity Insurance Company's Objection [Docket No. 53] is **SUSTAINED IN PART and OVERRULED IN PART**:  Peerless' Objection with respect to the communications in batch 2 and subparts a, b, e, f, and g of batch 3 is **Sustained**.  In all other respects, the Objection is **Overruled**.

2. Judge Brisbois' January 4, 2017 Order [Docket No. 52] is **AFFIRMED IN PART** as set forth above.

BY THE COURT:


　　　s/Ann D. Montgomery　　
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  February 15, 2017.